## WRIGHT v. DAVIS et al.
### . No. 4441.

Court of Civil Appeals of Texas. El Paso.
Nov. 15, 1945.

Rehearing Denied Dec. 13, 1945.

Clyde E. Thomas, of Big Spring, of Counsel, Thomas & Thomas, of Big Spring, and Earl Earp and Murray J. Howze, both of Monahans, for appellant.

T. H. Neel, of Monahans, and Hill D. Hudson, of Pecos, for appellees.

SUTTON, Justice.

This is an appeal from the judgment of the district court of Ward County. Appellant, John S. Wright, sued appellees, Baxter Davis and Fern Davis, to recover damages for the alleged conversion or failure to account for the proceeds of twenty bales of long staple cotton and cottonseed, twenty-five bales of short staple cotton and cottonseed, some feed, and for failure to account for one half the money collected by appellees on hail insurance. At the close of the evidence the appellees moved for an instructed verdict in their favor, and the court so instructed the jury and entered judgment upon such verdict. Appellees have filed no brief herein. The case is before us on five points of error. These points may be briefly summarized as assailing the action of the court in so instructing the verdict.

This litigation arose out of a share cropping contract between appellee, Baxter Davis, and appellant, relating to 300 acres of irrigated land in Ward County.

Appellant alleged that on or about January 1, 1943, he entered into a verbal contract with appellee, Baxter Davis, to cultivate and harvest crops to be raised on 300 acres of land in Ward County, the said appellee to furnish all tools, feed, fuel, and other things necessary for cultivating and harvesting crops to be raised thereon. By fair implication it appears that he was to furnish the labor for cultivation, maturing and harvesting said crops. Appellant avers he was to receive as remuneration all of the feed grown on ten acres of land, one-half of the long staple cotton and seed grown on 50 acres of land, and one-half of the short staple cotton and seed grown on 50 acres of land.

That in January, 1943, he entered upon the land and proceeded to diligently carry out his contract. On or about June 1, 1943, a hail storm destroyed part of the cotton, but that appellees had hail insurance on this crop and they collected a large sum thereon, for no part of which had they accounted to appellant. Further, that on or about June 5, 1943, appellee, Baxter Davis, through threats of the use of force, wrongfully compelled him to cease from the performance of his contract and yield up the possession of the premises, and has since such time excluded him therefrom. That thereafter appellees harvested off the land feed of the value of $750; that appellees picked, ginned and sold twenty bales of long staple cotton and twenty-five bales of short staple cotton and converted the proceeds to their own use; likewise as to the cotton seed. Appellant alleges he was entitled to the proceeds of all this cotton and seed, and likewise to the value of the feed; to one-half the hail insurance collected by appellees which he alleged to be the sum of $5,000. Exemplary damages were likewise sought.

There was an instructed verdict and a somewhat detailed examination of the evidence is required. Where appellant raised an issue by the evidence we shall assume same in his favor.

Appellant testified as to the contract with reference to 300 acres of land. He stated in substance he was to receive as compensation all of the feed on 10 acres of land, and one-half of the cotton produced on 50 acres of land. His son and brother were likewise to cultivate the 300 acres for a share of the crops. Appellees were to furnish everything in the way of tools, machinery, fuel and water. It was understood that some of the land was to be planted in long staple and some in short staple cotton.

Further, that he entered on the land in January, 1943, broke and leveled it and put up borders, then planted it; that he stayed on the place until June 6, 1943, when by threats and force by Baxter Davis he was forced to leave same; when he was so forced to leave the cotton was in fair shape, ready to be chopped, and the feed was in fair shape. Before he so left some of the cotton had been destroyed by hail. That Baxter Davis told him there was insurance on the long staple cotton; that to his own knowledge there were 52 bales of short staple and 4 bales of long staple raised on the place; that from January to June he worked continuously on the place; that after he was forced to leave the place he went home where he had some trucks and went to work. What he received for this work or its value he did not state, nor does it elsewhere appear from the testimony.

On cross-examination he testified that there was no particular time set for the designation of the 50 acres from which he was to receive the crop, that it was never measured off, that he was required to furnish any extra labor required for the cotton. He paid nothing for the insurance, did not know in whose name it had been taken out.

On re-direct that he had a conversation with Baxter Davis after the hail, that Davis said we would put it back in feed; that this conversation occurred after the cotton had been hailed out in May.

Leonard Wright testified as a witness for appellant. His testimony as to the contract between Baxter Davis and appellant was in substantial accord with that of appellant, save that appellant was to pay for the water; that he and his uncle and appellant, his father, were to work the 300 acres jointly, but under several contracts; that it was contemplated that as to 150 acres of cotton witness was to receive one-half of a 60-acre share, his father one-half of a 50-acre share and his uncle one-half of a 40-acre share. The crop was to be worked until September 1943, and then the four parties interested were to designate the location of the respective acreages.

That before the hail there was 100 acres planted in long staple and 94 acres in short staple. That a hail occurred about the last of May and destroyed 80 acres of long staple, which was thereafter planted in

feed. Before the hail 194 acres were planted to cotton and the balance in feed. However, it appeared from the testimony as a whole that the entire 300 acres was not planted to crops, and that it was not contemplated that the entire 300 acres should be so planted. Witness stated he remained on the land after his father left in June, and that on the 20 acres of long staple four bales were produced, and on the 94 in short staple, 52 bales. He said he helped to harvest the feed and estimated 6000 bundles were raised. In his opinion it was worth $300. This feed was stacked and spoiled in the stack. That he had a conversation with Baxter Davis in the spring in which Mr. Davis said the insurance was to be equally divided among the three, and he understood Mr. Davis was to get part of it.

There was a settlement sheet from the Texas Cotton Industries introduced in evidence, showing that Baxter Davis was credited as to the short staple cotton with $5,490.98 as gross proceeds, and $842 for seed, total gross proceeds $6,332.98. Debts were water rent, $864, seed $188, picking advance $1,463.70, and delivery ex. and insurance $444.30, net proceeds $3,331.40. As to the long staple, a credit for four bales of cotton, $974.30, for seed $51.18 and government insurance $2,770.40. The gross total was $3,798.88. But against this was $280.40 as picking advance, net proceeds, long staple and insurance, $3,518.48. This sheet purported to show net proceeds from the cotton and insurance was $6,849.48.

Appellees introduced no testimony. Their pleadings failed to show any other expenses, or these expenses, for that matter, or that the advances for picking cotton were so expended, or that the sheet referred to represented all their expense in connection with the cotton. In the discussion of this case it will be assumed, there being evidence at least to raise the issue, that appellee Baxter Davis on or about June 6, 1943, without legal justification, breached the contract made with appellant about January 5, 1943; that up to that date appellant had conformed to the contract and the breach was wrongful; that appellant quit the premises by reason of threats of force on the part of Baxter Davis. Further, that when this wrong took place the crops were planted to conform to the contract, and to earn the consideration provided for therein appellant would have to expend his labor and would be compelled to hire additional labor. It is thought it is beyond the power of one man to chop, cultivate and pick fifty acres of land in cotton, or even 25, for that matter.

The evidence discloses a breach of contract by appellee Baxter Davis. However, the measure of damages is not the value of the crops grown on the land by Davis. The measure was the value of appellant's share of what he probably would have raised upon the land, deducting therefrom his earnings, or what he could have earned in the exercise of reasonable diligence, together with the expense he would have incurred other than his own labor in cultivating, maturing and harvesting the crops. Rogers v. McGuffey, 96 Tex. 565, 74 S.W. 753; Waggoner v. Moore, 45 Tex.Civ.App. 308, 101 S.W. 1058, writ refused; Crews v. Cortez, 102 Tex. 111, 113 S.W. 523, 38 L.R.A.,N.S., 713; Springer v. Riley, Tex.Civ.App., 136 S.W. 577; Bost v. McCrea, Tex.Civ.App., 172 S.W. 561, writ refused; Lamar v. Hildreth, Tex. Civ.App., 209 S.W. 167, writ refused.

It follows, we think, as the necessary corollary to the rule above announced that appellant had no property rights in the crops produced by appellees.

Appellant did not plead the measure of damages above set forth, his evidence was insufficient to sustain the same. Evidence of what appellees did produce and their expenses in doing so may be evidentiary of what appellant would or could have produced, and his expenses in so doing. It is thought this alone is insufficient to sustain the burden imposed upon appellant under the above-cited authorities.

In appellee's motion for an instructed verdict, among the grounds stated are the following:

That appellant's action was for conversion, when evidence showed his remedy was for action for breach of contract and loss of crops. That there was variance between proof and pleading; further there was lacking proof of the proper measure of damages. One of the other two grounds urged in our opinion is manifestly untenable, the other is too general. The record fails to show conclusively the court followed appellee's motion in instructing the verdict. Let us assume that it did. In any event, the grounds stated seem to present the only possible tenable ground for the instruction. It might be urged with some degree of plausibility that there was vari-

ance between the contract relied upon and the contract to which appellant and his son Leonard testified. This testimony made it clear that appellant was to receive only half the cotton raised on 50 acres, and not half the short staple raised on 50 acres and half the long staple raised on 50 acres, as plead. There was no objection to the testimony, even if it would have been tenable. The court having instructed a verdict, it is not thought that by requesting the issues appellant waived himself out of court as to all others, even though the requested issues were properly refused.

Appellant relied on the contract in attempting to show his right in the feed, the long and short staple cotton sold by appellees. He neither plead nor proved the consequence to him of Baxter Davis' wrongful breach of the contract. His theory, as reflected by pleading and proof, was that the wrong excused him from the performance of the contract that he had only partially performed, and that he was entitled to recover the full fruits of the contract without regard to the further burdens imposed thereby on him.

Baxter Davis' breach of the contract prevented him from performing the contract and reaping the benefits thereof. He was entitled under proper pleading and proof to be placed in the position he would have occupied had he been allowed to fully perform, but not in a better position.

However, it does appear that Baxter Davis and his partner, Fern Davis, did infringe the contract rights of appellant. None of the damages sought in the petition were recoverable as a matter of law. It is thought that the breach of contract entitled defendant to nominal damages as against appellees. This right was denied him by the instruction of the court. A substantial right of the appellant was prima facie at least shown to have been violated. This being the case, it was error for the court to instruct a verdict against him, as to appellees. Davis v. Texas & P. Railway Co., 91 Tex. 505, 44 S.W. 822; Raymond v. Yarrington, 96 Tex. 443, 72 S.W. 580, 73 S.W. 800, 62 L.R.A. 962, 97 Am. St.Rep. 914.

It is not thought that the evidence would justify us in reversing and rendering this cause as against Baxter Davis and Fern Davis for nominal damages. It is thought that appellant's evidence was insufficient to show any right in the proceeds of the gov-

ernment insurance. However, we refrain from commenting thereon, for on another trial under different pleadings and additional evidence appellant may be able to show an interest therein.

It is ordered that the judgment be reversed and the cause remanded for a new trial.