KROH *v.* DOBSON.

1. CROPS—SALE OF REALTY—SEVERANCE.
   In the absence of contract or statutory restrictions, crops, whether mature or immature, so far partake of the nature of realty as to pass by a sale of the realty, where there has been no severance, either actual or constructive.

2. SAME—SEVERANCE BEFORE SALE OF REALTY.
   The owner of land before sale may effect a constructive severance of a crop and thus prevent it from passing to the purchaser.

3. SAME—WHEAT—SEVERANCE—LAND CONTRACTS—DEEDS.
   Where plaintiff sold farm to defendant under a land contract executed eight days before deed and latter instrument was silent as to wheat crop which had been reserved in the contract no rights of third parties have intervened and the parties had not changed their attitude toward the wheat in the time intervening between the execution of the contract and of the deed, there was effected a constructive severance of the wheat and, since the deed operated on the real estate only and not on the personal property, the wheat did not pass with the deed.

Appeal from Hillsdale; Rathbun (G. Arthur), J. Submitted February 28, 1949. (Docket No. 85, Calendar No. 44,250.) Decided April 11, 1949.

Bill by Albert Kroh against Andrew C. Dobson for an injunction restraining defendant from interfering with plaintiff's harvesting 10 acres of wheat. Decree for plaintiff. Defendant appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 15 Am. Jur., Crops, §§ 10-13.
[1-3] Conveyance of land as including mature but unharvested crops. 172 A.L.R. 815.

*Emil M. Fry* and *Kenneth W. Huggett,* for plaintiff.

*George W. McDowell,* for defendant.

REID, J.  Plaintiff filed a bill of complaint for an injunction to prevent defendant from interfering with plaintiff's harvesting 10 acres of wheat and for other relief.  From a decree granting the injunction prayed for, defendant appeals.

On April 9, 1947, plaintiff and defendant signed a land contract agreement for the sale of an 80-acre farm by plaintiff to defendant for $4,000, with a reservation, "Alfred Kroh [plaintiff] is to have the wheat and strawstack approximately 10 acres of wheat."

On April 17, 1947, plaintiff and wife conveyed by warranty deed to defendant and his wife, the 80-acre farm in question.  The deed contained no reservation as to the wheat crop, valued at $700.

Between April 9th and April 17th, the parties had made no change as to the wheat in any conversation, nor had the price that the purchaser, defendant, was to pay been changed.

There is some testimony that in the last part of April or first part of May, defendant asked plaintiff if plaintiff had any objection to his (defendant's) rolling the wheat, and that plaintiff said, "I have no objection, but I would rather you would cultipack it because it would break the ground up and be better for the wheat."

The dispute in this case is over the question of whether the reservation of the wheat in the land contract is still effective notwithstanding the later execution of the warranty deed with no reservation as to the wheat.

On this question, defendant cites *Clifton* v. *Jackson Iron Company,* 74 Mich. 183 (16 Am. St. Rep.

621). In that case plaintiff sued the defendant for trespass for cutting timber in the winter of 1885–1886. The defense was that the timber, though on plaintiff's land, belonged to defendant by reason of a written land contract made on September 22, 1877, more than 8 years before the trespass, in which defendant agreed to sell the land on which the timber stood to plaintiff, with the reservation of specified kinds of timber and the right to cut and remove any and all said timber at any time within 10 years after the date of the contract. On November 4, 1885, defendant conveyed to plaintiff the land in question by full warranty deed with no exceptions or reservations. On page 185 we say:

"Had no deed been made, it is agreed that the reservation would have prevailed. But a previous contract cannot contradict or control the operation of a deed. It was competent for defendant to relinquish any contract reservation, and a deed which grants and warrants without any reservation has that effect. We do not hold that if the deed were so made by some mistake within the cognizance of equity the mistake might not be corrected. Neither need we consider whether, after such a deed, there might not be such dealings as to render such timber-cutting lawful, by license, express or implied. In this case there was no testimony tending to show that the deed was not supposed and intended to close up all the rights of the parties."

If title to growing crops were to be recognized as being in precisely the same situation as the title to standing timber and if there had been in the instant case no conversation in which defendant acknowledged plaintiff's right to the growing wheat, our decision in this case in pursuance of the principle laid down in the *Clifton Case*, just cited, would be for the defendant. However, there is to be observed a distinction between title to growing trees, the nor-

mal life of which would exceed the normal span of human life, and a growing crop which is annual in its nature with physical severance to occur within the year.   Usually the standing timber is not the product of direct human intervention but the crop is produced as the result of the activities of and very often subject to the interest of some person not possessing any interest in the title to the real estate.

Without laying down the following as being a hard and fast rule in all cases to which the same might be considered applicable, we quote from 1 Thompson on Real Property (Perm. Ed.), pages 195–197, § 138:

"The rule is, in the absence of contract or in the absence of statutory restrictions, that the crops, whether mature or immature, where there has been no severance, either actual or constructive, so far partake of the nature of realty as to pass by a sale of the realty as to ripe crops and as to unperformed contracts for future conveyance of land.   This rule, however, is not followed in some jurisdictions.   Also, annual crops have been held, in some jurisdictions, not to pass to a purchaser at a judicial sale.

"Until a crop is severed from the land upon which it is grown, it is such part of the real estate as will pass by a deed of conveyance or by a devise of the land, unless reservation thereof is made in the deed, or there is evidence contained in the will of the testator that the devisee of the land should not be entitled to the crop.   In Ohio and Pennsylvania, growing crops are held to be personal property to the extent that a parol reservation made by the grantor will be enforced, but even in these States, if no reservation of the crops is made either in the deed or by parol, the crop passes to the grantee.   It is only in a limited sense that growing crops are a part of the real estate.   While they pass by a deed or mortgage of the land, they possess the characteristics of personal property in most other respects. They may be sold and transferred as personal prop-

erty by the owner, and as such they may be attached and taken upon execution by the creditors."

In the case at bar, it does not appear that the rights of any innocent third party have intervened. By the contract for sale of the farm (preceding the deed), the title to the wheat was constructively severed.

"The owner of the land before sale, or foreclosure of a vendor's lien against it, may effect a constructive severance of a crop, and thus prevent it from passing to the purchaser." *Ray* v. *Foutch* (Tex. Civ. App.), 50 S. W. (2d) 380, 381.

In the case at bar, as between the parties to the transaction, the sale, the wheat was personal property. There was no change in the attitude of the parties toward the wheat in the time intervening between the contract and the deed, so that when the deed was executed, the wheat, being personal property as between the parties, did not pass under the deed. The deed operated on the real estate only and not on the personal property. That such was the actual understanding of the parties is evidenced by the conversation as to rolling the wheat.

If there had not been constructive severance, there being no reservation in the deed, the title to the wheat would have passed to defendant under the deed in question.

The trial court found the plaintiff to be "entitled to the ownership and possession of the wheat described in said bill of complaint, and entitled to enter upon the lands of the defendant for the purpose of harvesting the same and the removal thereof," and granted the injunction prayed for.

The decree appealed from is affirmed.  Costs to plaintiff.

SHARPE, C. J., and BOYLES, BUTZEL, and CARR, JJ., concurred with REID, J.  BUSHNELL, ·NORTH, and DETHMERS, JJ., concurred in the result.